UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SECURITIES & EXCHANGE COMMISSION,                :
                                                 :
                              Plaintiff,          :
                                                 :         REPORT AND
          -against-                               :         RECOMMENDATION
                                                 :
                                                 :         No. 21-CV-5294-ARR-JRC
DANIEL CATTLIN and WILLIAM R. SHUPE,             :
                                                 :
                              Defendants.         :
-------------------------------------------------------------------x
JAMES R. CHO, United States Magistrate Judge:

    Plaintiff Securities and Exchange Commission (the "Commission" or "Plaintiff") brings

this securities fraud enforcement action pursuant to Sections 17(a)(1) and 17(a)(3) of the

Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(1), (3), Section 10(b) of the Securities

Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c)

thereunder, 17 C.F.R. § 240.10b-5(a), (c), against Daniel Cattlin ("Cattlin" or "Defendant") and

William R. Shupe ("Shupe," and collectively, "Defendants").[1]  The Commission alleges that

Defendants schemed with a group of individuals fraudulently to "acquire and sell the stock of

various publicly traded companies."  *See* Compl. ¶¶ 1, 9, Dkt. 1.

    Upon Plaintiff's application and in light of Cattlin's failure to appear in or otherwise

defend this action, the Clerk of the Court entered Cattlin's default on May 5, 2022.  Dkt. 20.

Plaintiff now moves for default judgment and seeks disgorgement, prejudgment interest, civil

penalties, and injunctive relief in the form of an order barring Cattlin from future securities fraud

violations, from participating in any offering of a penny stock and from serving as an officer or

---

[1] On April 27, 2022, Plaintiff and Shupe advised the Court that they had reached a settlement and
jointly filed a motion for judgment.  Dkt. 15.  On April 28, 2022, the Court entered a final
judgment against Shupe.  *See* Final Judgment entered April 28, 2022.  Dkt. 16.  The motion for
default judgment before this Court applies only to Cattlin.

director of a public company.  *See generally* Pl. Mot. for Def. J., Dkt. 31.  The Honorable

Allyne R. Ross referred any motion for default judgment to this Court for a report and

recommendation.  *See* Notice entered on May 6, 2022.  For the reasons set forth below, this

Court respectfully recommends granting, in large part, Plaintiff's motion.

## I.    Relevant Factual and Procedural Background

The following facts are drawn from Plaintiff's Complaint and are accepted as true for

purposes of adjudicating the pending motion.

Pursuant to an investigation initiated by the Commission, Plaintiff alleges that between

2016 and 2020 Defendants schemed with a group including two other individuals, Timothy and

Trevor Page (together, the "Pages"), to acquire and sell fraudulently the stock of various

publicly-traded companies.  *See* Compl. ¶¶ 1-8.  Plaintiff alleges that the Pages secretly obtained

control over publicly-traded companies EnviroTechnologies International, Inc. ("EnviroTech"),

BioHemp International, Inc. ("BioHemp") and Cyberfort Software Inc. ("Cyberfort") by

acquiring, through various nominee shareholders a significant percentage of those companies'

publicly-traded stocks.  *See id.* ¶¶ 1-8, 31, 80-83, 92-106, 131-35.  Plaintiff further alleges that

the Pages controlled the operations of BioHemp and Cyberfort through Cattlin, who acted at the

request of the Pages to cause the companies to take various actions for the Pages' benefit,

including:  issuing shares to nominee entities that the Pages controlled; effecting stock splits and

other transactions to consolidate and conceal the Pages' control of outstanding shares; and

issuing company press releases in coordination with promotional campaigns that the Pages

financed to drive demand for the stock that the Pages were surreptitiously selling through

nominee entities.  *See id.* ¶¶ 1, 64, 67-69, 71-79, 80-83, 92-106, 108-09, 116-25.  According to

the Commission, the Pages dumped their stock into the market and disguised their actions by

selling through various nominee entities. *See id.* ¶¶ 1, 4, 39, 41. The Commission further alleges that the Pages' sales yielded millions of dollars in illegal stock sale proceeds and that the Pages directed a portion of these proceeds to Cattlin. *See id.* ¶¶ 1, 90, 93, 131-35, 137.

Specifically, in February 2018, the Pages installed Cattlin as the CEO and sole Director of BioHemp. *See id.* ¶¶ 64-65. In October 2018, Cattlin effected corporate transactions to consolidate the Page's secret control of the publicly available shares of the company, including executing a 1-for-1,000 reverse split of its stock. *See id.* ¶ 72. During 2018 and 2019, Cattlin failed to identify the Pages' beneficial ownership in BioHemp stock in its Form 10-k filings. *See id.* ¶ 75. Cattlin's role as officer and sole director of BioHemp enabled the Pages to dump over 3.1 million shares of BioHemp stock into the market, for a profit of approximately $3.6 million without disclosing their control over the company. *See id.* ¶ 93.

Similarly, Cattlin assisted the Pages in selling Cyberfort stock by concealing their control of the company. In 2018, as CEO of Cyberfort, Cattlin helped the Pages amass Cyberfort shares through various nominees, resulting in the Pages controlling almost the entire float of Cyberfort stock (the company's purportedly unrestricted stock). *See id.* ¶¶ 96-106. In fact, the Pages controlled over 99 percent of Cyberfort stock through a combination of nominees, including Cattlin. *See id.* ¶¶ 107-115. Ultimately, the Pages sold 1.27 million shares of Cyberfort stock at a profit of approximately $1.9 million, while concealing their control over the company. *See id.* ¶ 133.

Plaintiff further alleges that in addition to operating Cyberfort and BioHemp and facilitating the illegal sales of stock on behalf of the Pages, Cattlin coordinated with the Pages to provide false and misleading information in response to the Commission's investigative subpoenas and questions related to BioHemp. *Id.* ¶ 7. Further, when interviewed by the

Commission's staff in June 2020 about his role as Cyberfort's chief executive officer, Cattlin provided false and misleading answers designed, among other things, to disguise the Pages' involvement in the company. *See id.* ¶¶ 4, 71, 73, 79, 136.

On September 23, 2021, the Commission commenced this action. *See* Dkt. 1. On November 12, 2021, the Summons and Complaint, in addition to other documents in this case, were served personally through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention") on Cattlin, who resides in the United Kingdom, and proof of service was filed on April 29, 2022. Dkt. 17. The Summons required Cattlin to file his answer or otherwise respond to the Complaint within twenty-one days of service, or by December 3, 2021. *See id.* On May 5, 2022, the Clerk of the Court issued a Certificate of Default as to Cattlin. Dkt. 20.

In the present motion, the Commission seeks five forms of relief against Cattlin -- a permanent injunction against future securities fraud violations, disgorgement of ill-gotten gains with interest, civil monetary penalties, and penny stock and officer and director bars. *See* Pl. Mem. in Support ("Pl. Mem.") at 5, Dkt. 31-1. The Commission's motion is now before this Court on a referral from Judge Ross.

## II.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment. The Rule sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. *See id.*; *see also* Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default."). This first step is nondiscretionary. *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2).

Here, on May 5, 2022, the Clerk of the Court entered a Certificate of Default against Cattlin after he failed to appear. Dkt. 20. To date, Cattlin has not appeared or moved to vacate the entry of default.

When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Lab'ys, Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted). A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted).

"Default judgments are 'generally disfavored and are reserved for rare occasions.'" *City*

*of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96). Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*. at 95. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice"). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, *see* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *King v. STL Consulting LLC*, No. 05-CV-2719, 2006 WL 3335115, at *4-*5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the Complaint put

the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved -- the more money involved, the less justification for entering the default judgment. *See Hirsch v. Innovation Int'l, Inc.*, No. 91-CV-4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the Complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-CV-2660, 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019); *see also Enron Oil*, 10 F.3d at 96; *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Double Green Produce*, 2019 WL 1387538, at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

As to the first factor, "a defendant's nonappearance and failure to respond sufficiently demonstrates willfulness." *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411, 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017).

Here, Cattlin has not responded to the Complaint despite proper service. *See* Summons Returned Executed, Dkt. 17; Status Report, Dkt. 18. Plaintiff filed an affidavit of service of the

motion for default judgment on Cattlin. *See* Dkt. 32. On May 15, 2023, the Commission served a copy of Plaintiff's Motion for Default Judgment Against Defendant Daniel Cattlin (Dkt. 31), the Memorandum in Support of Plaintiff's Motion for Default Judgment, and Exhibit 1 thereto (Dkts. 31-1, 31-2), the supporting Declaration of Nita Klunder (Dkt. 31-3), the Clerk's Certificate of Default (Dkt. 31-4), the Complaint (Dkt. 31-5), and the proposed final judgment as to defendant Cattlin (Dkt. 31-6), by the United States Postal Service and FedEx upon Cattlin at his last known address and a second address to which he is tied through available records. *See* Dkts. 32, 32-1. The Commission also included the Court's May 10, 2023 Minute Entry in the packages sent to Cattlin. Dkt. 32. However, the packages were returned as undeliverable. Dkt. 33. On June 1, 2023, the Commission informed Cattlin of the pending motion for default judgment by text message. *See id.* On July 24, 2023, the Commission attempted to re-serve the motion for default judgment on Cattlin at a new address by the United States Postal Service and FedEx. Dkt. 34. On August 7, 2023, the packages were returned to the Commission. Dkt. 35.

Based on the confirmed service of the Summons and Complaint on Cattlin, the multiple efforts by Plaintiff to serve Cattlin at three addresses, including his last known address, and to apprise Cattlin of these proceedings by email and text message, *see, e.g.,* Dkts. 24-25; Minute Entry dated 8/15/2022, Dkts. 32-35, this Court is satisfied that Cattlin has received notice of these proceedings and the pending, as well as prior, motions for default judgment. This Court also finds that the Commission has complied with its obligation under Local Civil Rule 55.2(c) to serve a copy of the motion for default judgment on Cattlin, and advise the Court that the packages were returned as undeliverable. *See* Local Civil Rule 55.2(c) (requiring service of motion papers at the "last known residence of such party"); *Moskovitz v. La Suisse*, No. 06-CV-4404, 2013 WL 6197163, at *3 (S.D.N.Y. Nov. 25, 2013) ("Whether the [defendant] received

the documents or not is of no moment -- and the admitted inability to deliver is no bar to the

entry of a default judgment."); *see also Allstate Ins. Co. v. Nazarov*, No. 11-CV-6187, 2015 WL

5774459, at *7 n.6 (E.D.N.Y. Sept. 30, 2015) ("service was complete upon mailing").  Cattlin

has nonetheless failed to respond to Plaintiff's motion for default judgment or to otherwise

appear in this action.  Accordingly, Cattlin's failure to respond to the Complaint, prior Orders,

and motions filed in this action demonstrates that the default was willful.

As to the second factor, Cattlin's failure to appear in this action has left the Court unable

to assess whether Cattlin has a meritorious defense.  This weighs in favor of granting a default

judgment.  *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where

a defendant fails to answer the complaint, courts are unable to make a determination whether the

defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor

weighs in favor of granting a default judgment.").

With respect to the third factor, because Cattlin has demonstrated a refusal to engage in

this action, "there are no additional steps available to secure relief [against Cattlin] in this

Court."  *Trs. of Bldg. Trades Educ. Benefits Fund v. Romero Elec. LLC*, No. 19-CV-3515, 2021

WL 3604811, at *4 (E.D.N.Y. July 19, 2021) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines,

LLC*, No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)), *report and

recommendation adopted*, 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021).  This Court finds that

the prejudice factor weighs in favor of default judgment.

Accordingly, this Court recommends finding that Cattlin's failure to answer or otherwise

respond to the Complaint constitutes an admission of the factual allegations therein, and now

proceeds to consider whether those facts establish Cattlin's liability under federal law.

III.     **Liability Under the Exchange Act § 10(b), Rule 10b-5, and the Securities Act § 17(a)**

The Court must first determine whether Plaintiff's allegations in the Complaint, if accepted as true, establish liability. *See S.E.C. v. Scott*, No. 13-CV-5113, 2015 WL 13742024, at *6 (E.D.N.Y. July 15, 2015) (internal citations omitted); *see also Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014) (under both a motion to dismiss and a motion for default, the plaintiff must proffer well-pleaded allegations). On a motion for default judgment, the burden is on the plaintiff to establish an entitlement to recovery, and a failure to plead sufficient facts may require the denial of the motion. *See Danser v. Bagir Int'l*, 571 F. App'x 54, 55 (2d Cir. 2014); *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 58 (2d Cir. 2013); *Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-0873, 2011 WL 1100111, at *2 (E.D.N.Y. Mar. 22, 2011) (discussing the "threshold requirement" that a complaint be well-pleaded).

In this case, the Commission alleges that Cattlin has violated Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(1), (3), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5(a), (c). The Commission also alleges, in the alternative, that Defendant aided and abetted, and unless restrained and enjoined will continue to aid and abet, the Pages' violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act, and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder. *See generally* Compl.; Pl. Mem.

To establish a claim under Section 10(b) and Rule 10b–5, the Commission must sufficiently allege that Cattlin "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *S.E.C. v. Pentagon Cap. Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013) (quoting *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999));

*see also S.E.C. v. Baldassare*, No. 11-CV-5970, 2014 WL 2465622, at \*4 (E.D.N.Y. May 29, 2014) (same); *S.E.C. v. Opulentica, LLC*, 479 F. Supp. 2d 319, 327 (S.D.N.Y. 2007) (same).[2] "Information is material if a reasonable investor would consider it important in the decision to buy or sell securities." *Baldassare*, 2014 WL 2465622, at \*5 (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).

To establish a claim under Section 17(a), the Commission must allege "[e]ssentially the same elements . . . in connection with the offer or sale of a security, though no showing of scienter is required for the [Commission] to obtain an injunction under subsections (a)(2) or (a)(3)." *Pentagon Cap. Mgmt.*, 725 F.3d at 285 (quoting *Monarch Funding Corp.*, 192 F.3d at 308); *see also S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996).[3]

---

[2] Section 10(b) of the Exchange Act provides, in relevant part, as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange -- . . .

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 provides that, in connection with the "purchase or sale of any security," it is unlawful "directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) [t]o employ any device, scheme, or artifice to defraud, . . . or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. §§ 240.10b-5(a), (c).

[3] Section 17(a) of the Securities Act provides, in relevant part, as follows:

> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly -- (1) to employ any

The Commission has satisfied each of the requisite elements set forth above.  First, the allegations demonstrate that Cattlin knowingly made misrepresentations about material facts. Cattlin allegedly defrauded investors by disguising the sale of stock held by, or on behalf of, the Pages, who were public company affiliates.  The Pages, through Cattlin's assistance, secretly secured control over publicly-traded companies BioHemp (previously known as Blake Insomnia Therapeutics, Inc., Compl. ¶¶ 16, 76) and Cyberfort by acquiring, through nominee shareholders, a significant percentage of the companies' publicly-traded stocks.  *See* Compl. ¶¶ 1, 80-83, 92-95, 100-106, 131-35.  Specifically, the Pages controlled the operations of BioHemp and Cyberfort through Cattlin.  Cattlin, as CEO of BioHemp and Cyberfort, took steps including effecting stock splits and other transactions to consolidate and conceal the Pages' control of outstanding shares and issuing company press releases in coordination with promotional campaigns that the Pages also financed to drive demand for the stock that the Pages were surreptitiously selling through nominee entities.  *See* Compl. ¶¶ 1(b), 3, 7, 64, 67-69, 72, 75, 77-78, 80-83, 88, 93-95, 97-103, 108-25.  Further, Cattlin, in coordination with the Pages, provided false and misleading information in response to Commission inquiries.  *Id.* ¶¶ 7, 71, 73, 79, 136. Cattlin also failed to make the requisite disclosure regarding the Pages' greater than five percent beneficial ownership of BioHemp in the company's 10-K.  *Id.* ¶ 75.

Second, Cattlin made these alleged misrepresentations with the requisite scienter. Scienter is defined as "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  Cattlin's scienter is well-established

---

device, scheme, or artifice to defraud, . . . or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a)(1) and (3).

here.  Cattlin's numerous actions to hide the Pages' involvement demonstrate that he acted with the requisite scienter.  Cattlin acted with the full knowledge and express purpose of defrauding investors.  *See, e.g., S.E.C. v. Wey*, 246 F. Supp. 3d 894, 912 (S.D.N.Y. 2017) (concealing identity of shareholders and making material misrepresentations to third parties "raises a strong inference of conscious misbehavior").  Accordingly, the Commission has satisfied the scienter requirement.

Third, the allegations adequately establish that Cattlin's misrepresentations were made in connection with the offer or sale of securities.  The "in connection with" element has been interpreted broadly to include a wide-range of securities-related fraudulent activities.  *See, e.g., S.E.C. v. Zandford*, 535 U.S. 813, 819 (2002); *Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984).  Here, the Commission alleges that the Pages "dumped [publicly-traded stocks] into the market and disguised their actions by selling through various nominee entities," the sales "yielded millions of dollars in illegal stock sale proceeds," and a portion of the proceeds were "funneled" to Cattlin.  Compl. ¶ 1(c).  Accordingly, the Commission has satisfied this element.

Further, the Commission must sufficiently allege that some "means or instrumentality of interstate commerce" was used in connection with the fraud to provide this Court with jurisdiction.  17 C.F.R. § 240.10b–5; *Scott*, 2015 WL 13742024, at *7.  Cattlin's alleged use of "the internet" to commit the fraudulent acts is sufficient to demonstrate that he used an "instrumentality of interstate commerce," for purposes of Section 10(b) and Section 17(a).  Compl. ¶¶ 71, 73, 79, 118, 120, 121, 123, 136(c); *S.E.C. v. One or More Unknown Traders in Common Stock of Certain Issuers*, No. 08-CV-1402, 2009 WL 3233110, at *4 (E.D.N.Y. Oct. 2, 2009) (instrumentalities of interstate commerce include the "Internet"); *S.E.C. v. Tourre*, No. 10-

CV-3229, 2013 WL 2407172, at *11 (S.D.N.Y. June 4, 2013) (interstate commerce element of section 17(a) satisfied when defendant uses, *inter alia*, email to accomplish the alleged fraud). By using the internet in connection with the fraudulent scheme, Cattlin used an "instrument" or "instrumentality" of interstate commerce. 15 U.S.C. § 77q; 15 U.S.C. § 78j; 17 C.F.R. § 240.10b–5.

Accordingly, the allegations in the Complaint are sufficient to demonstrate Cattlin's liability under Sections 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder. *See, e.g., First Jersey*, 101 F.3d at 1467.[4]

## IV.   Relief

In light of this Court's determination that Cattlin is liable for violating securities fraud laws, the Commission is entitled to appropriate relief as determined below.

### A.   Disgorgement

Plaintiff seeks disgorgement from Cattlin in the amount of **$107,140** pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act. *See* Pl. Mem. at 15-16.  The Exchange Act, as amended, states that "[i]n any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order,

---

[4] Based on this Court's finding that Cattlin violated Sections 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rules 10b-5(a) and (c) thereunder, the Court need not address the Commission's Third Claim for relief of "aiding and abetting" violations of those same provisions against Cattlin. *See S.E.C. v. Constantin*, 939 F. Supp. 2d 288, 310 n.15 (S.D.N.Y. 2013) (having found defendant primarily liable for securities fraud, Court declines to address plaintiff's alternative claims of aiding and abetting violations of the Exchange Act). Even if the Court were to consider the Commission's alternative claim for relief, this Court would find Cattlin subject to liability as "aiding and abetting" for the same reasons the Court found Cattlin subject to primary liability for violating securities fraud laws. *See S.E.C. v. Pentagon Cap. Mgmt. PLC*, 612 F. Supp. 2d 241, 266 (S.D.N.Y. 2009) (finding defendant liable for aiding and abetting for the same reasons it found defendants subject to primary liability for securities violations).

disgorgement." 15 U.S.C. § 78u(d)(7). "Disgorgement serves to remedy securities law violations by depriving violators of the fruits of their illegal conduct." *S.E.C. v. Ahmed*, 72 F.4th 379, 395 (2d Cir. 2023); *see S.E.C. v. Coronati*, No. 16-CV-2022, 2016 WL 6462240, at *3 (E.D.N.Y. Oct. 14, 2016), *report and recommendation adopted*, 2016 WL 6462261 (E.D.N.Y. Nov. 1, 2016). "District courts are accorded broad discretion in calculating disgorgement amounts associated with securities law violations. *See Coronati*, 2016 WL 6462240, at *3 (citing *S.E.C. v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014)). "The only restrictions imposed upon courts in the awarding of disgorgement is that the amount constitute a reasonable approximation of the profits causally related to the illicit activity." *Id.* (citing *First Jersey*, 101 F.3d at 1475). In that respect, the Commission must show that its proposed disgorgement figure reasonably approximates the amount of unjust enrichment. *See S.E.C. v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021); *S.E.C. v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013). Once the Commission has made an initial showing approximating the profits related to the unlawful activity, the burden shifts to the wrongdoer to demonstrate that the disgorgement amount requested is not a reasonable approximation of the unlawfully obtained profits. *Razmilovic*, 738 F.3d at 31-32.

Plaintiff alleges, and this Court accepts as true, that the Pages' sales in violation of the antifraud provisions of the securities laws and the registration provisions of Section 5 generated millions in trading proceeds. *See* Compl. ¶¶ 1, 93, 133, 135. Plaintiff further alleges that Cattlin was paid $107,140 from the Pages' illegal stock sale proceeds for serving, on their behalf, as an officer or director of BioHemp and Cyberfort. *See id.* ¶ 137. Accordingly, Plaintiff alleges that those proceeds must be disgorged as ill-gotten gains. *See S.E.C. v. de Maison*, No. 18-2564, 2021 WL 5936385, at *82 (2d Cir. Dec. 16, 2021) (summary order) (upholding disgorgement that was a reasonable approximation of net profits). Specifically, Plaintiff seeks disgorgement

from Cattlin in the amount of **$107,140**, broken down by year as follows:  $19,200 for proceeds in 2017, $7,000 for proceeds in 2018, $66,470 for proceeds in 2019, and $14,470 for proceeds in 2020.  *See* Pl. Mem. at 16.  The Commission specifies that it "intends to distribute the funds collected from Cattlin, in combination with any fund recovered from other related defendants, to harmed investors if it is feasible to do so."  *Id.*

To meet its evidentiary burden, plaintiff must submit affidavits or documentary evidence supporting its approximation.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (court must ensure "a basis for the damages specified in the default judgment").  Although plaintiff may be entitled to recover the amount sought based on a proper evidentiary showing, plaintiff has not provided any sworn statements from a person with knowledge or documentary evidence in support of its disgorgement approximation.  In the absence of any evidence submitted in support of the amount claimed, the court cannot simply accept plaintiff's approximation.  *See Baldassare*, 2014 WL 2465622, at *8-*9 ("Without such an evidentiary proffer, the court lacks an independent factual basis upon which to confirm the Commission's entitlement to the requested relief."); *S.E.C. v. One or More Unknown Traders in Com. Stock of Certain Issuers*, No. 08-CV-1402, 2009 WL 3233110, at *6 (E.D.N.Y. Oct. 2, 2009) ("In the absence of any evidence, the court cannot accept plaintiff's approximation."); *see also S.E.C. v. Pallais*, No. 08-CV-8384, 2010 WL 5422531, at *5 (S.D.N.Y. Dec. 23, 2010) ("absent evidence to support its claimed amount of unjust enrichment, the SEC was not entitled to equitable relief").  Therefore, the Commission's request for disgorgement is denied without prejudice to a further showing by the Commission through affidavits and documentary evidence supporting its disgorgement approximation.  If the Commission satisfies that obligation, since Cattlin has failed to demonstrate, as is his responsibility under the burden-shifting standard set

16

out in *Razmilovic*, 738 F.3d at 31-32, that the disgorgement requested is not a reasonable approximation of the unlawfully obtained profits, the Court recommends that Cattlin be ordered to disgorge the amount sought by the Commission of **$107,140**.

### B. Prejudgment Interest

The Commission seeks prejudgment interest from Cattlin in the amount of **$17,217.62**. *See* Pl. Mem. at 16.

Prejudgment interest is ordered by courts typically to deprive the wrongdoer of the benefit of "what amounts to an interest free loan procured as a result of illegal activity." *S.E.C. v. Rinfret*, No. 19-CV-6037, 2020 WL 6559411, at *6 (S.D.N.Y. Nov. 9, 2020) (citations omitted); *see also Contorinis*, 743 F.3d at 308 (prejudgment interest can be awarded in addition to disgorgement to deprive a defendant of the time value of money). As with the award of disgorgement, the Court has broad discretion whether to grant prejudgment interest and what rate to use for the calculation. *See First Jersey*, 101 F.3d at 1476-77 (using IRS underpayment rate because it "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from [his] fraud"); 17 C.F.R. § 201.600(b) (Commission Rules of Practice state that prejudgment interest is computed at IRS underpayment rate, compounded quarterly). Prejudgment interest is calculated "for the entire period from the time of the defendants' unlawful gains to the entry of judgment." *First Jersey*, 101 F.3d at 1477.

The Commission alleges, and this Court accepts as true, that Cattlin received an additional benefit from controlling some of the proceeds of the scheme, and he should be obligated to repay this amount. *See S.E.C. v. Lek Sec. Corp.*, 612 F. Supp. 3d 287, 293

(S.D.N.Y. 2020) ("an award of prejudgment interest may be needed in order to ensure that the defendant not enjoy a windfall as a result of its wrongdoing.").

Plaintiff "proposes the use of the IRS underpayment rate, compounded quarterly and has computed prejudgment interest using this method." Pl. Mem. at 16. This Court finds application of that rate appropriate here. *See Ahmed*, 72 F.4th at 403-04. Plaintiff proposes that "[t]he prejudgment interest on the proceeds earned for each year [be] calculated separately, assuming (favorably to Cattlin) that all of the trading proceeds were received on the last day of the year in which they were earned." Pl. Mem. at 16. The ending date for the prejudgment interest calculation provided by the Commission was March 31, 2023.[5] Dkt. 31-2 (prejudgment interest reports showing calculations by year for Cattlin's disgorgement). Applying this method, the Commission requests prejudgment interest in the amount of $17,217.62, broken down by year as follows: $5,047.37 for proceeds in 2017; $1,432.17 for proceeds in 2018; $9,346.40 for proceeds in 2019; and $1,391.68 for proceeds in 2020. Pl. Mem. at 16; Dkt. 31-2.

Thus, upon a proper evidentiary proffer regarding the amount of disgorgement, this Court finds the Commission's calculations reasonable, and since Cattlin has failed to contest the amount sought, this Court recommends awarding the Commission prejudgment interest in the amount of **$17,217.62** from Cattlin.

### C.    Civil Penalty

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize the Court to order civil monetary penalties for securities fraud violations. *See* 15 U.S.C.

---

[5] In its memorandum of law, the Commission erroneously states that the end date for its interest calculation is May 31, 2022. *See* Pl. Mem. at 16. In addition, since the Commission has not requested additional interest accruing through the entry of judgment, the Court recommends awarding only the amount requested.

§§ 77t(d); 78u(d)(3).  Courts have looked to the following factors to determine whether civil penalties are appropriate, many of which overlap with the factors for permanent injunctive relief, to determine the reasonableness of a penalty:  (1) the seriousness of the violations; (2) the defendant's scienter; (3) the repeated nature of the violations; (4) whether the defendant has admitted wrongdoing; (5) the losses or risk of losses caused by the conduct; (6) any cooperation provided to enforcement authorities; and (7) ability to pay.  *See S.E.C. v. Verdiramo*, No. 10-CV-1888, 2013 WL 57823, at *3 (S.D.N.Y. Jan. 7, 2013), *report and recommendation adopted*, 2013 WL 399230 (S.D.N.Y. Feb. 1, 2013); *S.E.C. v. DiBella*, No. 04-CV-1342, 2008 WL 6965807, at *6 (D. Conn. Mar. 13, 2008).  The statutes provide for three "tiers" of penalties, which increase based on the seriousness of the violation.  Tier one is warranted for any violation.  *See* 15 U.S.C. § 78u(d)(3)(B)(i).  Tier two is warranted for a violation involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement."  *Id.* § 78u(d)(3)(B)(ii).  Tier three is warranted when the violation also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  *Id.* § 78u(d)(3)(B)(iii).  The Commission argues in favor of third-tier penalties.

Here, the Commission alleges that Cattlin enabled the Pages to disguise their actions while dumping stock into the market through various nominees yielding millions of dollars in illegal stock sale proceeds.  *See* Compl. ¶¶ 1, 7, 59, 72, 93-94, 133.  Because the Commission alleges that "Cattlin knowingly or recklessly engaged in fraudulent conduct that at the very least created a significant risk of substantial investor losses," the Commission asserts that the Court should impose a third-tier penalty on Cattlin.  *See* Pl. Mem. at 17.  Here, the Commission alleges that Cattlin played a critical role in a long-running fraud scheme.  *Id.*  Accordingly, the Commission requests that the Court impose the maximum civil monetary penalty.  In addition,

the Commission notes that Cattlin, as CEO, "held a position of public trust at two separate companies and in that role acted with a high degree of scienter in furthering the fraudulent scheme to dump millions of dollars of stock on unsuspecting investors." *Id*. at 18; Compl. ¶¶ 3, 67-69, 71b, 72, 75, 80-83, 100-03.

For violations occurring after November 2, 2015, the third-tier penalty amount for a natural person is the greater of $230,464 per violation or the gross amount of the defendant's pecuniary gain from each violation. *See* 15 U.S.C. § 77t(d)(2)(C); 78u(d)(3)(B)(ii); 17 C.F.R. § 201.1001(b); Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2024), available at https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.htm. Cattlin's ill-gotten gains described in the Complaint and in the motion for default judgment relate to calendar years 2017 to 2020 (all of which fall after November 2, 2015). *See* Compl. ¶ 137; Pl. Mem. at 16-18. Given the seriousness of Cattlin's conduct and significant violations of the public trust, the Court agrees with the Commission and recommends imposing the third-tier penalty and ordering Cattlin to pay a civil penalty of **$230,464**.

### D.    Injunctive Relief

The Commission argues that injunctive relief is proper in this case. The Commission seeks a permanent injunction enjoining Cattlin from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b–5 of the Regulations promulgated thereunder. *See* Pl. Mem. at 11-14. The Commission also seeks an Order barring Cattlin from participating in any offering of a penny stock and further barring Cattlin from serving as an officer or director of a public company. *See* Pl. Mem. at 18-22.

### 1.    Permanent Injunctive Relief

With regard to permanent injunctive relief, when there has been a violation of Section 10(b) and Rule 10b–5 of the Exchange Act, Section 21(d) of the Exchange Act authorizes the Commission to seek, and the court to grant, permanent injunctive relief "upon proper showing." *S.E.C. v. Tannenbaum*, No. 99-CV-6050, 2007 WL 2089326, at *2 (E.D.N.Y. July 19, 2007) (quoting 15 U.S.C. § 78u(d)(1)); *see also S.E.C. v. Lipkin*, No. 99-CV-7357, 2006 WL 435035, at *1 (E.D.N.Y. Jan. 9, 2006).  In addition to proof that the defendant committed the alleged violation, a "proper showing" requires "proof that a reasonable likelihood exists that violations will occur in the future." *Tannenbaum*, 2007 WL 2089326, at *2 (internal quotations and citation omitted).

"'[A] court makes a prediction of the likelihood of future violations based on an assessment of the totality of the circumstances surrounding the particular defendant and the past violations that were committed.'"  *S.E.C. v. China Energy Sav. Tech.*, No. 06-CV-6402, 2008 WL 6572372, at *7 (E.D.N.Y. Mar. 28, 2008) (quoting *S.E.C. v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980)).  Courts consider several factors when determining whether there is a realistic likelihood of future violations:  "(1) the degree of scienter involved; (2) the isolated or persistent nature of the past fraudulent acts; (3) the defendant's appreciation of his wrongdoing; and (4) the defendant's opportunities to commit future violations." *Opulentica*, 479 F. Supp. 2d at 329 (citing *S.E.C. v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998)).

Each of these factors is satisfied in this case.  First, with respect to the degree of scienter, the Commission alleges that Cattlin acted "knowingly and intentionally" in carrying out a complicated scheme to defraud.  Pl. Mem. at 13.  Second, Cattlin netted proceeds of $107,140 as a result of the scheme to defraud over a period of four years from 2017-2020, "demonstrating

that the occurrences were not isolated." *One or More Unknown*, 2009 WL 3233110, at \*5; *see also Lipkin*, 2006 WL 435035, at \*1 ("The occurrences were not isolated, but rather took place continuously over a two-month period.").

With respect to the third factor, where, "as here, a party has failed to appear, that party fails to recognize his wrongdoing and provide assurances against further violations." *China Energy Savings*, 2008 WL 6572372 at \*8.

Fourth, having served as a CEO of two corporations, Cattlin may be in a position in the future to have the opportunity to commit further violations. Finally, the injunction that will be imposed "is not onerous; it enjoins the defendant[] from violating the law." *One or More Unknown*, 2009 WL 3233110, at \*5.

Accordingly, this Court recommends issuing a permanent injunction prohibiting Cattlin from committing further violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b–5 of the Regulations promulgated thereunder.

### 2.   Penny Stock and Officer-Director Bar

Sections 21(d)(2) of the Exchange Act and 20(e) of the Securities Act authorize district courts to bar a person who violated the securities laws from acting as an officer or director of an issuer of securities. *See* 15 U.S.C. §§ 78u(d)(2), 77t(e). With regard to the penny stock offering bar, under Section 20(g)(1) of the Securities Act and Section 21(d)(6) of the Exchange Act, courts have the authority to bar any person from participating in an offering of a penny stock if that person was participating in the offering of a penny stock at the time of the misconduct. *See* 15 U.S.C. §§ 77t(g)(1); 78u(d)(6). A "person participating in an offering of penny stock" includes "any person engaging in activities with a broker, dealer or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of, any penny stock."

15 U.S.C. §§ 77t(g)(2); 78u(d)(6)(B).  "Penny stock" is defined in Section 3(a)(51) of the Exchange Act and in Rule 3a51-1 thereunder as equity securities that do not meet certain exemptions (essentially many stocks that do not trade on a national securities exchange and that trade under $5 per share and whose issuers do not meet certain thresholds of tangible assets or revenue).  *See* 15 U.S.C. §§ 78c(a)(51).

 The standard for imposing a penny stock or officer-director bar requires courts to assess "(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur."  *S.E.C. v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995) (internal quotations omitted); *see also S.E.C. v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 429-30 (S.D.N.Y. 2007), *aff'd*, 300 F. App'x 70 (2d Cir. 2008).  "The standard for imposing [a penny stock] bar essentially mirrors that for imposing an officer-or-director bar."  *Universal Exp.*, 475 F. Supp. 2d at 429.

First, Cattlin committed egregious violations of the Securities and Exchange Acts, as discussed above.  Second, Cattlin repeatedly violated the law over a period from 2017-2020 at two separate companies.  Third, Cattlin was the highest-ranking officer, as the CEO of two companies at issue in this case.  *See* Compl., ¶¶ 3, 67-69, 71(b), 72, 75, 80-83, 100-03.  Fourth, Cattlin acted with a high degree of scienter, as previously discussed.  Fifth, Cattlin profited significantly from the fraud.  Sixth, as discussed above, the likelihood of a future violation is high.

In addition, this Court accepts as true that all traded stocks involved in Cattlin's scheme and later identified in the Complaint were penny stocks within the Exchange Act's definition as

they traded well below $5.  *See* Pl. Mem. at 19.  Further, Cattlin was "participating in an offering of penny stock" when he, on behalf of BioHemp and Cyberfort, oversaw the issuance of stock to various nominee entities controlled by the Pages.  *See* Compl. ¶¶ 80-83, 100-03.

Accordingly, as a result of the egregious and repeated nature of Cattlin's misconduct, **this Court recommends imposing a penny stock and officer-director bar on Cattlin**.

## Conclusion

For the reasons stated above, this Court respectfully recommends granting in large part the Commission's motion for default judgment.  The Commission is entitled to relief as follows:

(1)    Upon the Commission's submission of a proper evidentiary basis for its allegations concerning the amount received by Cattlin, disgorgement in the amount of **$107,140**, plus prejudgment interest in the amount of **$17,217.62**;

(2)    Civil penalties in the amount of **$230,464**; and

(3)    Injunctive relief in the form of a **permanent injunction prohibiting Cattlin from committing further violations** of Section 10(b), Rule 10b–5, and Section 17(a) of the Securities and Exchange Acts, and **prohibiting Cattlin from participating in any offering of penny stock or acting as an officer or director of a public company**.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve on defendant a copy of this Report and Recommendation by overnight mail and first-class mail at all known addresses for defendant, and to file proof of service on ECF by **March 13, 2024**.  Plaintiff shall also notify defendant of this Report and Recommendation by email and text message.  Any objections to the recommendations made in this Report must be filed with the Honorable Allyne R. Ross within

14 days after the filing of this Report and Recommendation and, in any event, on or before

**March 22, 2024**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely

objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.

1989) (*per curiam*) (discussing waiver under the former ten-day limit).  The Clerk is requested to

enter this Report and Recommendation into the ECF system.

        **SO ORDERED**

Dated:  Brooklyn, New York
       March 8, 2024

                     s/ James R. Cho
                     James R. Cho
                     United States Magistrate Judge